# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF ESSEX, NOVEMBER TERM 1858, AT SALEM.

PRESENT :

Hon. LEMUEL SHAW, Chief Justice.
Hon. THERON METCALF,  
Hon. GEORGE T. BIGELOW, } Justices.
Hon. BENJAMIN F. THOMAS,

---

EBENEZER DODGE & another *vs.* ESSEX INSURANCE COMPANY.
SAME *vs.* SAME.

An open policy of insurance " on property on board vessel or vessels at and from any port or ports in the United States to any other port or ports in the United States, as per indorsements, with liberty to stop at any intermediate ports or places," bore this indorsement: " Liberty is given to stop at Norfolk or other ports for trade, by adding one eighth per cent. for each. This policy attaches as follows : Schooner Potomac; Norfolk to Salem or Boston." *Held*, that the risk terminated by arriving at Salem without a previous election of Boston as the port of final destination, although the vessel immediately received orders to proceed to Boston; and that evidence of former usage under similar policies between the same parties to put into Salem and then proceed to Boston, and to settle with the underwriters afterwards by paying an additional premium of one eighth per cent. did not affect this policy.

A bill in equity to reform a policy of insurance, filed more than six years after notice of the ground on which the liability is denied, and more than a year after judgment for the defendants on that ground in an action at law thereon, is barred by the statute of limitations, although jurisdiction in equity to reform the policy is not conferred on the court until after the expiration of six years and immediately before the filing of the bill.

THE plaintiffs on the 4th of October 1848 sued the defendants in assumpsit upon an open policy of insurance for $4000, pay

VOL. XII.    5

able in sixty days after proof and adjustment of loss, " on prop-erty on board vessel or vessels at and from any port or ports in the United States to any other port or ports in the United States, as per indorsements hereon ; with liberty to stop at any intermediate ports or places, and for the captain to act as pilot ;" and bearing these indorsements : " Liberty is given to stop at Norfolk or other ports for trade, by adding one eighth per cent. for each. This policy attaches as-follows " : among others, " Schooner Potomac ; Voyage, Norfolk to Salem or Boston," for $2700, July 8th, and $300, July 15th, 1848.

This action was tried at November term 1849, before *Fletcher*, J., and by him reported for the decision of the whole court, sub-ject to all legal objection to the competency of the following evidence :

It appeared that the Potomac, laden with corn, sailed from Norfolk, and arrived at Salem about noon on the 17th of July 1848, and the master came to the plaintiffs' counting room there, and was told that his port of discharge was Boston, and re-ceived orders to go there ; but the schooner was wrecked on her passage there, the same day. The plaintiffs introduced evidence that under former similar policies between the same parties ves-sels had come into Salem and discharged parts of their cargo and then proceeded to Boston, and the plaintiffs had afterwards settled with the defendants by paying one eighth per cent. ad-ditional premium. It appeared that after the schooner stranded the plaintiffs did nothing about her, and the cargo was saved by persons employed by the president of the defendants ; but the defendants introduced evidence to show that in doing this he acted for himself and not for them.

By the bill of lading, signed by Benjamin F. Merritt as mas-ter, the cargo was to be delivered to the plaintiffs at Salem, with this agreement added : " That if Messrs. Dodge & Co. shall de-sire the corn to be delivered at Boston or any other port of equal distance and convenience, the said Captain Merritt shall there deliver it ; they paying an additional one half per cent. per bushel."

This case was argued at Boston in January 1854.

Dodge & another *v.* Essex Insurance Company.

*R. Choate*, for the plaintiffs. The evidence offered by the plaintiffs was admissible to explain the policy. 1 Arnould on Ins. (Amer. ed.) §§ 41, 44 & note. 3 Kent Com. (6th ed.) 260, note. 1 Greenl. Ev. § 292. *Clark* v. *Baker*, 11 Met. 186. *Eaton* v. *Smith*, 20 Pick. 150. *Macy* v. *Whaling Ins. Co.* 9 Met. 363. Or at least to show the usage of the plaintiffs, known to the defendants. 1 Arnould on Ins. § 43, & note. 1 Duer on Ins. 263. 1 Greenl. Ev. § 293. *Bourne* v. *Gatliff*, 11 Cl. & Fin. 69, 70.

If the word " or " in the clause " Norfolk to Salem or Boston " is to be considered disjunctive, the evidence was admissible to show an election by the plaintiffs, and clearly proves it.

But the policy covered a voyage from Norfolk to Salem and Boston. A policy should be construed liberally for the insured, and the word " or " may be construed " and " to carry out the intention of the parties. *Jackson* v. *Blanshan*, 6 Johns. 54, & cases cited. This intention, as appearing from the whole policy, was to insure from the port of lading to the port of final discharge. The liberty given to stop at any port for trade, by adding one eighth per cent. for each, authorizes the assured to do so, and inform and settle with the underwriters afterwards.

In any view, the plaintiffs had two ports of discharge, with a right of election which remained until exercised or lost. They never made election of Salem ; at Salem they elected Boston, and this turned Salem into an intermediate stopping place. They were not bound to elect before arrival, because it would abridge the value of their right of election, and would do the insurer no good, since, after such election abroad, they might still trade at Salem on their way to the elected port. *King* v. *Middletown Ins. Co.* 1 Conn. 194. *Sage* v. *Middletown Ins. Co.* 1 Conn. 239. *King* v. *Hartford Ins. Co.* 1 Conn. 333. *Lapham* v. *Atlas Ins. Co.* 24 Pick. 1. *Ellery* v. *New England Ins. Co.* 8 Pick. 19. *Coolidge* v. *Gray*, 8 Mass. 531. See also *Cross* v. *Shutliffe*, 2 Bay, 223 ; *Gray* v. *Gardner*, 17 Mass. 190 ; *Peisch* v. *Dickson*, 1 Mason, 9 ; *Fowler* v. *Ætna Fire Ins. Co.* 7 Wend 270 ; *Carruthers* v. *Sheddon*, 6 Taunt. 14 ; 1 Phil. Ins. § 463.

*S. Bartlett*, for the defendants.

The decision was made and judgment entered on the 15th of June 1854.

SHAW, C. J.   This risk terminated at Salem, and the property being lost, on the passage from Salem to Boston, under an order given to the master at Salem after arrival there, it was not a loss covered by this policy.   The open policy from any port or ports in the United States to any other port or ports in the United States constituted no contract of insurance, until made operative and efficient by the indorsement.   The termini, uncertain in the open policy, are made certain by the indorsement.   Its legal operation is like that of a policy on property, by the Potomac, from Norfolk to Salem or Boston, with the liberties expressed in the policy, and in the caption to the indorsements.   The *terminus a quo* is Norfolk, and the *terminus ad quem* is either Salem or Boston, as the assured might direct. It is left uncertain by the contract, but it must be made certain at some time, and must be determined by the court.   At whatever time that election might be made, within the stipulated limits, whether at the time of the departure from Norfolk, or at any time before arriving at the dividing point in the voyage, or at what other time, it must be before the termination of the risk, and that risk will terminate on arrival at Boston or Salem, whichever shall first happen.   This appears to the court to be the clear legal result of the contract; and we see nothing in the anterior usage or practice of the parties to vary this result.   If we look at all beyond the policy, we find that the cargo was shipped for account of the assured, under a contract with the owners of the vessel to carry it to Salem, with a further stipulation, that if on its arrival at Salem the shipper should desire it to be carried by the vessel to Boston or any other port equally near and convenient, it should be done for a small additional freight, showing the first destination to be Salem.   Had there been a similar stipulation in the policy, it might have been different.   When a risk is intended on any terms to be extended beyond the fixed terminus, either in time or place, it must be done in explicit terms, and the conditions strictly complied with.   *Salvin* v. *James,* 6 East, 571.

*Plaintiffs nonsuit.*

Equity jurisdiction was conferred upon this court in cases of fraud, on the 14th of April 1855, and in cases of accident and mistake, on the 5th of March 1856. *Sts.* 1855, *c.* 194 ; 1856, *c.* 38. The plaintiffs on the 23d of May 1856 filed a bill in equity to reform the policy. The defendants contended that the suit was barred by the statute of limitations. And the chief justice, after a hearing at April term 1858, reserved this point, and others not material to be stated, for the determination of the whole court.

*R. H. Dana, Jr. & T. P. Pingree, Jr.*, for the plaintiffs. This suit is within the limitation of twenty years, fixed by the Rev. Sts. *c.* 120, § 7, unless it is within § 1, limiting the time of bringing certain actions to six years. It is not expressly included in § 1 ; for no cause of action at law under the policy ever existed ; and a cause of action in equity to reform the contract, so as to give an action at law, did not lie until after the passage of the *Sts.* of 1855 and 1856. Even if the cause of action is to be dated as if there had always been equity jurisdiction, it did not accrue until 1854, when it was first decided that there was no remedy at law, and therefore that the remedy, if any, was in equity. The plaintiff cannot justly be held bound to have known this from the first. The lapse of time occurs *pendente lite*, and perhaps by the fault of no one, or of the defendants.

If an action at law is brought upon a certain construction of a written contract, and the existence of the cause of action is solely a 'question of law on that construction, and it is rejected, and a suit in equity is thereupon brought between the same parties, solely to remedy the defect in the written contract, the time during which the suit at law was pending is to be deducted from the limitation of the statute ; at least, unless there was want of good faith, or of reasonable cause, or of reasonable diligence. 1 Story on Eq. § 529. *Lopdell* v. *Creagh*, 1 Bligh N. R. 255. Suppose the plaintiff, after the decision in June 1854, had obtained leave to amend his declaration by inserting a bill in equity to remedy the defect in the contract, could the statute of limitations have been afterwards pleaded as a legal bar to the amended bill, the six years not having expired when the

amendment was allowed? See *Beardmore* v. *Rattenbury*, 5 B. & Ald. 452.

In June 1854, which was within six years from the loss, the amendment could not be made, nor a new suit brought, because the legislature withheld the remedy. The case is therefore within the equity of the Rev. Sts. *c.* 120, § 11, allowing actions seasonably commenced and defeated by defects in form or service, to be renewed within a year. *Woods* v. *Houghton*, 1 Gray, 580.

The statute of limitations against a suit in equity, founded in fraud, accident or mistake, runs from the time when the fraud, accident or mistake is discovered; or at least from the time when, with reasonable diligence, it ought to be discovered. This plaintiff could not discover it, until the legal decision at law, and he took the best and only course for discovering it. On a fair question of pure law, where two courses are open to him, he cannot be held to guess right and anticipate the court's decision at his peril, whichever course he takes. 2 Dan. Ch. Pract. (Amer. ed.) 736 & notes. Angell on Lim. §§ 28, 191, 193. *Emmons* v. *Hayward*, 6 Cush. 501. *First Massachusetts Turnpike* v. *Field*, 3 Mass. 201. Rev. Sts. *c.* 120, § 12.

*O. P. Lord*, for the defendants.

BIGELOW, J. It is unnecessary to consider most of the questions discussed at the argument of this case, because we are of opinion that the statute of limitations is a bar to the maintenance of this bill. It was filed on the 23d of May 1856. The loss which is claimed under the policy happened on the 17th of July 1848, and the amount alleged to be due from the defendants on the contract of insurance became payable, if at all, in sixty days after proof and adjustment of loss. The action at law to recover the amount of the loss was commenced on the 24th of October 1848, and was tried in this court in November 1849. At the trial the point of law on the construction of the clause of the policy, which it is the purpose of the suit to reform as having been inserted by mistake, was raised, and subsequently it was decided against the plaintiffs. It is clear beyond controversy on these facts that a suit at law on the policy would be barred.

In England, courts of equity do not hold themselves absolutely barred by the provisions of the statute of limitations. They adopt it only as a rule by which to guide the exercise of their discretion. In the courts of chancery in this country it is otherwise. Full force and effect is given to the statute in equity as at law. It operates on equitable proceedings *suo vigore,* and not as a rule of comity, or as a measure of judicial discretion. *Farnum* v. *Brooks,* 9 Pick. 212. The question which this case presents is, whether, after all remedy at law is barred, a party can revive a claim and recover it in equity under an allegation of mistake in framing the contract. Our first impression is, that if the alleged accident or mistake was proved so as to warrant a court of equity in reforming the contract, it would not avail the plaintiffs. The time when the breach of the contract took place and the cause of action accrued would remain unchanged, and so after the contract was reformed the statute would still be an absolute bar to the recovery of damages. This view derives additional strength from the position assumed by the plaintiffs, that in this suit, after entering a decree reforming the contract, it would be the duty of the court to go on and assess the damages for a breach of the contract and enter a final decree therefor. We confess we are unable to see why, after the mistake in the contract shall have been corrected, the cause of action which accrued in 1848 is not barred.

But if this be not so, there is still an insuperable difficulty which stands in the way of giving the plaintiffs any equitable relief. The authorities are quite decisive that even in the courts of chancery in England, where the statute of limitations is acted on only as a guide to the discretion of the court, in cases of bills filed to correct mistakes in contracts, the courts will refuse to grant relief, as in cases of fraud, if the period of limitation has elapsed between the filing of the bill and the time when the mistake was discovered or when by the use of due diligence it ought to have been discovered. *Brooksbank* v. *Smith,* 2 Y. & Col. Exch. 58. *Blair* v. *Bromley,* 5 Hare, 542, and 2 Phil. Ch. 354. *Hough* v. *Richardson,* 3 Story R. 659. Assuming this to be the true doctrine, it is decisive against the right of the

plaintiffs to maintain this bill. The plaintiffs knew how the clause in the policy which they now seek to change was framed, as early as 1849, when, at the trial of the suit at law, they found that the defendants put a different construction on the language of the contract from that for which the plaintiffs contended, and entirely at variance with the true agreement, as they allege it was originally entered into. If there was any mistake in the contract, they knew it then, and more than six years have elapsed since it was disclosed to them. No new fact has come to their knowledge since, by which they have learned that the clause in question was in any respect framed differently from the real contract between the parties. The language of the contract, it is true, has received a judicial construction which differs from that which the plaintiffs put upon it. But this error on their part furnishes no ground for the maintenance of this bill. It was a mistake of law only as to the meaning of words actually inserted in the contract, and not a mistake as to form of words in which the parties agreed the contract should be enforced. Such a mistake cannot be relieved against in equity. 1 Story on Eq. §§ 111, 137.

It is scarcely necessary to add that the legislature, in giving to this court jurisdiction in equity in cases of fraud, accident and mistake, did not intend to revive claims or causes of action which had become barred before the statute was passed. Such a retroactive effect of a statute would be contrary to the ordinary and regular operation of legislative enactments, and cannot receive judicial sanction, unless required by a provision of the statute expressed in terms too clear to admit of doubt.

*Bill dismissed.*