THE MORRIS CANAL AND BANKING COMPANY *vs.* STEARNS.

1. Suspicious circumstances attending the confession of a judgment, in the absence of proof that the debt was not real, or that it was got up for a fraudulent purpose, will not warrant such decree.

2. The conveyance of the debtor's real estate having been made for a sum much less than its value, and the circumstances connected therewith showing that the conveyance was made to defraud complainants, it is void against them, and the lands will be sold to satisfy their judgment.

---

Argued on final hearing, upon bill, answer, and proofs.

*Mr. Williamson* and *Mr. E. W. Runyon*, for complainants.

*Mr. C. Parker* and *Mr. R. S. Green*, for defendants.

THE CHANCELLOR.

Josiah O. Stearns died August 29th, 1867, intestate. He was never married. His brothers, Amos C. Stearns and Eckley W. Stearns, were his heirs-at-law. They and his

mother, Mehitable C. Stearns, were his next of kin.  Administration of his estate was granted on the 16th of September, 1867, to his mother and his brother Amos, by the surrogate of Union county, in which he resided at his death.  He died seized of several tracts of land in the county of Hudson, in this state, and of a tract in Clinton county, Pennsylvania.

The complainants commenced a suit against Eckley W. Stearns on the 17th day of October, 1867, in the Supreme Court of this state, in which they obtained judgment for $3108.90, on the 2d day of January, 1868, and issued execution, which was levied on Eckley's interest in the lands of which Josiah died seized, in Hudson county.

Eckley was indebted to Josiah at his death.  On the 27th of November, 1867, Eckley and the defendants had a settlement of this indebtedness.  The amount was settled at $78,-930.40.  On the 16th of October, 1867, he conveyed to the defendants his interest in the lands of Josiah, in Hudson county.  The consideration of this was $15,000, to be credited on his indebtedness to the estate; and for the balance, $63,930.40, on the 27th day of November, 1867, he gave his note to the defendants as administrators of Josiah, with a warrant of attorney to confess judgment for that amount, on which judgment was entered in Union County Circuit Court for the amount, with costs, on the 27th of November, 1867.

The indebtedness of Eckley to Josiah was computed from a note for $9587, given by Eckley to Josiah, and from checks drawn and acceptances made by Josiah for him, found in Josiah's possession at his death, and which, at the settlement, Eckley admitted were accommodation checks and drafts by Josiah for him, and had been taken up by Josiah.  Eckley died in 1868; and there was no other proof of this indebtedness than his admissions made at this settlement, and a computation in his handwriting, made at that time, of the principal and interest due on these claims.

The complainants allege that this indebtedness of Eckley to the estate was not real, but was got up between him and the defendants to cover Eckley's estate, and protect it from

them and his other creditors, and that the conveyance of this real estate to them was without consideration and a fraud upon his creditors; that if he did owe the intestate, his distributive share of the estate was sufficient to pay all his indebtedness; and that the price of $15,000 was far below the value of his estate in the lands, and that the sale at that price was a fraud upon them.

The settlement of his indebtedness to the estate, made by Eckley, and introduced into the evidence by the complainants, is proof of his debt to that amount, in the same manner as a note given by him to the intestate would be proof of it. In both cases, the *bona fides* of the transaction could be impeached by a creditor; and in the case of a note given pending suit, as this was, by an insolvent, this *prima facie* proof of the debt would be easily overcome. But here there is not any proof to show that this debt was not real, or that it was got up for a fraudulent purpose. The most that can be said is, that the circumstances are such as to give cause for suspicion.

On the settlement of their final account as administrators, the defendants charged themselves with the amount admitted by this settlement to be due from Eckley, and the balance in their hands for distribution, after payment of debts and expenses, was $156,108, of which Eckley, as next of kin, was entitled to $52,036. This the administrators could apply towards the payment of his debt of $68,774.89 at that date, and it would leave a balance of more than $16,000 due from him.

The value of the real estate of Josiah in Hudson county, at his death, was shown by different witnesses. Their estimates varied from $56,000 to $65,000. There was a contract entered into by him with Melick and Son, at the time of the purchase of these lands by them for him, that he would pay them one-fourth of the net profits on a sale; and as the lands had advanced in value from one hundred to one hundred and fifty per cent., this fourth of the profit may be assumed to be one-eighth of the value of the lands. If this value is assumed to be $60,000, the fourth would be $7500.

There was also a mortgage for $5000 on part of these lands, given or assumed by Josiah, with interest in arrear on it, besides taxes due and in arrear at his death, which, at this valuation, would reduce the half belonging to Eckley to about $26,000. One John G. Hewes had recovered a judgment against Eckley, in the Supreme Court, for $1737.54, which was an encumbrance on his share, and would reduce its value to near $24,000.

If the value of the whole in October, 1867, is assumed to be $56,670, the lowest estimate by any witness for the defendants, the value of Eckley's share would be about $22,500 at the time it was conveyed to the defendants for $15,000, or $7500 in excess of the price allowed. This is double the amount of the debt due to the complainants. This fact, in connection with the fact that this conveyance was made after the complainants' claim was placed in the hands of their attorney for collection, and while the correspondence was going on between him and Eckley about the matter, and while the attorney was "holding on" for a few days at Eckley's request, in which, as he wrote to the attorney, he thought the matter could be adjusted, seems to me sufficient proof that this conveyance was made to defraud the complainants—especially as Eckley took advantage of the delay he got from the attorney, under the false pretence of adjusting the matter, to convey this property to the defendants. The suit was commenced the day after the conveyance, and the matter is in the same condition as if the conveyance was made immediately upon suit begun, which is always a badge of fraud. As to $7500 of the value of this property, it was a voluntary conveyance to the defendants without consideration, and to that extent it operated as a fraud upon the complainants, whether there was any intent to defraud or not, even upon the assumption that both parties, at the conveyance, supposed that it was a fair price for the property.

The conveyance must be held void against the complainants, and the lands must be sold to satisfy their judgment.