This is a bill brought by a trustee in bankruptcy to set aside a conveyance and a mortgage as in fraud of creditors.
There is no question as to right of complainant to maintain this action.
In the case of Crane v. Brewer et al., 73 N.J. Eq. 558,
Vice-Chancellor Howell held (syllabus 4):
"Under the express terms of the Bankruptcy act of July 1st, 1898 (30 Stat. 565 ch. 541 § 70e; U.S. Comp. Stat. 1901 p.3451), a trustee in bankruptcy represents all the creditors of the bankrupt, and takes all his property and *Page 254 
rights, and may institute such proceedings to avoid illegal transactions as any of them might."
The facts in this case are as follows:
On November 1st, 1927, and prior thereto, Harry Mayer was the owner of certain property in the city of Newark, known as 53 Seventh avenue, which property, on November 1st, 1927, had a value of $24,000. On July 13th, 1927, the said Harry Mayer gave a mortgage on the said property to his father, Marcus Mayer, in the sum of $6,000. On November 1st, 1927, he conveyed the said property to his brother-in-law, Morris Magenheim, for the sum of $19,500, the above mortgage being part of the purchase price. Harry Mayer was adjudicated a bankrupt on December 12th, 1927, and there are not sufficient assets in the hands of the trustee to pay creditors in full, the trustee testifying that he received $1,000 for the bankrupt's assets, and that the total balance in his hands at the present time is $830, and that the claims filed in the bankruptcy court, which were introduced in evidence in this proceeding, disclose that among said claims there are creditors of said bankrupt with present unpaid claims, which claims were in existence at the time of the transfer and mortgaging of said bankrupt's property, to wit, on July 13th and November 1st, 1927, as follows:
Old Dutch Mills, claim filed for $77.76.
Adolph Teitelbaum, claim filed for $135.50.
Roma Provision Company, claim filed for $29.
M. Augenblick and Brother, claim filed for $604.20 and other claims, the total of all claims filed being $21,214.89. The schedules of the bankrupt were also introduced in evidence. They show that on the date of the bankruptcy, December 12th, 1927, the bankrupt swore that he had assets totaling $2,000 and liabilities totaling $60,626.90, leaving a deficit of $58,626.90.
It seems to me, therefore, that the only question to be determined in this case is one of fact, namely, did Marcus Mayer and Morris Magenheim, at the time of the execution of the mortgage and the deed, have reasonable cause to believe that Harry Mayer was at that time insolvent? *Page 255 
There were no books of account of the bankrupt. He says he kept his accounts on paper bags which he threw away from time to time. This, if true, is certainly an extraordinary method of keeping books, but perhaps a good way to conceal assets. His creditors, he admits, had been pressing him for at least two years. He also says that merchandise which actually cost him $15,000 was "ate up by rats." He allowed this rat plague to continue during the two years his creditors were pressing him. He estimates that the rodents consumed $10,000 worth of goods. He had fixtures which cost him $3,200, but when he filed his bankruptcy petition, he said: "I looked around and saw all the fixtures are really broken up [whether by the rats is not stated] and I figured if anybody wants to move them out I don't think they can get a $50 bill."
On March 25th, 1927, he filed a bank statement, showing a net worth of $42,027.67.
On December 12th, 1927, at the time of the bankruptcy, the bankrupt had instead of net assets of $42,000 a deficit of $58,626.80. The only consideration for the mortgage was an alleged debt due the father, Marcus Mayer, which debt became due in 1926. There was no present consideration.
In the case of Empire State Trust Co. v. Trustees of WilliamF. Fisher Co., 67 N.J. Eq. 602, the court of errors and appeals held (syllabus 3): "A mortgage given merely to secure antecedent debts is not given `for value,' within the meaning of clause e in section 70 of the Federal Bankrupt act, or for `a valuable consideration,' within the meaning of section 64 of the New Jersey Corporation act."
Vice-Chancellor Garrison said, in the case of Horton v.Bamford, 79 N.J. Eq. 356 (syllabus 10): "As to a voluntary conveyance made by one who is indebted, there is an irrebuttable presumption of fraud."
It follows from what I have said that the mortgage should be set aside.
As to the conveyance to Magenheim, the conditions are somewhat different. Magenheim paid $19,500 for the property. Its real value, according to the bankrupt's own statement, *Page 256 
was $24,000. Magenheim was the bankrupt's brother-in-law. Simon Englander was the attorney for both parties in the transfer. He says he discussed Mayer's financial condition with Mayer and advised him that in the event of bankruptcy he might get into trouble. He says that this advice might have been given in Magenheim's presence. In any event, as attorney for Magenheim, he searched the title. It is reasonable to suppose that as any reputable member of the bar would do, he informed his client of Mayer's statements as to his insolvency.
Magenheim, himself, admits that Mayer told him he was short of money. He had to sell the house in order to get money. Knowing this, Magenheim bought the property at less than its market value. Considering the testimony as a whole, I am convinced that both the father, the mortgagee, and the brother-in-law, the grantee of the deed, knew when these instruments were executed that Mayer was insolvent. I find this to be the fact. The testimony shows that the bankrupt lost very large sums in Florida within a month after he gave the bank statement above referred to, namely, about $46,000, and it is only reasonable to suppose he so informed his father and brother-in-law.
Vice-Chancellor Garrison says, to quote again from Horton v.Bamford, supra (syllabus 6): "Circumstances such as would put a reasonable person upon inquiry with respect to the financial condition of a transferror will charge creditors or others dealing with a failing debtor with such facts as they would have learned had they properly investigated."
The father and brother-in-law say they did not know the bankrupt's financial condition. I have found, as a fact, that they did know. But, admitting for the sake of argument that they did not, the circumstances in the case put upon them the duty to investigate, which duty they neglected, and did so at their peril.
The deed should be declared a mortgage for the amount actually paid by Magenheim.
I will advise a decree accordingly. *Page 257