This is a plenary suit instituted by plaintiff, trustee in bankruptcy of defendants, Virginia De Marco and Antonio De Marco, her husband, to set aside a conveyance of the premises No. 1085 Springfield Avenue, New Providence, Union County, New Jersey, made by them as grantors to their daughter and son-in-law, Janice Callahan and James F. Callahan, as grantees. The premises in question were encumbered by a mortgage in the approximate amount of $11,000. However, the deed dated June 26, 1947 and recorded the following day with the Register of Union County, was a full covenant and warranty deed, wherein no mention was made of the unpaid mortgage or any other liens. Petitions in bankruptcy were filed *Page 431 
within six months of the conveyance, to wit, on December 24, 1947. The complaint charges that the "conveyance was voluntary and without the support of an adequate consideration and was fraudulent as against complainant" and that "the property was worth a great deal more than the consideration stated" in the deed.
In the bankrupts' "Statement of Affairs" annexed to the petitions in bankruptcy, Question No. 10 is as follows: "10. Transfer of Property. (a) What property have you transferred or otherwise disposed of during the year immediately preceding the filing of the original petition herein? (Give a description of the property, the date of the transfer or disposition, to whom transferred or how disposed of, and, if the transferee is a relative, the relationship, the consideration, if any, received therefor, and the disposition of such consideration)." Defendant Antonio De Marco answered such question as follows: "Transferred to James Francis Callahan. House under construction. Unfinished — creditors threatened foreclosure." Virginia De Marco answered the same question as follows: "House under construction — several suits and lien claims — forced to transfer title to prevent further suits." It will be noted that both replies were evasive and failed to state the information requested.
The schedules annexed to the bankruptcy petitions show that the bankrupts had no assets, and each listed the same creditors, ten in number, with claims aggregating $2,921, of which about $2,600 was for building materials furnished and labor performed in the construction of the dwelling house on the premises in question.
Although in their amended answer and at final hearing, the defendants asserted a consideration of $14,000 for the conveyance, the grantors testified they received no money. The affidavit of grantors Virginia De Marco and her husband states the consideration as $14,000 "as will be shown by the revenue stamps attached to the deed on record", but only $1.10 in revenue stamps was affixed to the deed offered in evidence, which stamps indicate a consideration of not more than $1,000. However, on July 11, 1947, within two weeks of the conveyance, a *Page 432 
mortgage loan of $14,000 on the premises in question was secured by the grantees from the Union Central Life Insurance Co., the entire proceeds of which, except for fees of less than $100, were used to discharge a previously existing mortgage, mechanic's lien claims and taxes.
The bankrupts' daughter and her husband denied knowledge of the grantors' financial obligations, but the proofs reveal that since June, 1947, they have all resided in the premises, that the grantees knew the grantors were having financial difficulties in completing the building and the grantors' creditors had told Mrs. Callahan that they had to have the money her parents owed them. Further, the grantees knew that at the time of the conveyance the grantors were insolvent. Knowledge of the unpaid lien claims against the bankrupts at the time of the conveyance would place any reasonably prudent person upon inquiry of grantors' other existing debts, particularly since the grantees admittedly paid no cash for the grantors' equity. The evidence clearly discloses that the grantors intended to render themselves without assets by the conveyance to their daughter and her husband, so that unpaid creditors would not realize the money due to them. Dealings between close relatives whereby the property of debtors is conveyed to those not indebted, are at best viewed with suspicion. Stearn v. Morris Canal Banking Co., 23 N.J. Eq. 414 (Ch. 1873), affirmed 24 N.J. Eq. 588 (E. A. 1874);Hoboken Bank for Savings v. Beckman, 36 N.J. Eq. 83 (Ch.
1882); Horton v. Bamford, 79 N.J. Eq. 356 (Ch. 1911);Unger v. Mayer, 105 N.J. Eq. 253, (Ch. 1929), affirmed107 N.J. Eq. 185 (E. A. 1930); Williamson v. Bender,105 N.J. Eq. 363 (Ch. 1929), affirmed 107 N.J. Eq. 466 (E. A. 1930). Moreover, the bankrupts themselves stated that they conveyed title to their daughter and her husband because "creditors threatened foreclosure" and "to prevent further suits." It is quite obvious that they made a voluntary conveyance at a time when they were insolvent and unable to pay their creditors. Hancock v. Elmer, 61 N.J. Eq. 558 (Ch. 1903), affirmed 63 N.J. Eq. 802 (E. A. 1902).
A witness for the plaintiff testified that he and his wife inspected the property with the idea of purchasing it, but that *Page 433 
the defendant Mrs. De Marco asked $30,000 for it. While this is denied by Mrs. De Marco, the property is variously estimated at values from $16,000 to $18,000. Certainly, the mortgage of $14,000 granted by the Union Central Life Insurance Co. would indicate a value well in excess of the amount of the mortgage, which is also the amount of the alleged consideration. Therefore, it appears that the defendant grantors, Antonio De Marco and his wife, had a reasonable equity in the premises, which, under the circumstances, it was fraudulent of them to convey to their daughter and her husband. The relationship of the parties and the existing facts lead persuasively to the conclusion that both the grantors and the grantees acted with intent to defraud grantors' creditors and accordingly the conveyance is void and will be set aside. R.S. 25:2-3.
Judgment will be entered in accordance with the foregoing conclusion.