Florine WILLIAMSON, Appellant,

v.

Dorothy W. KELLEY et al., Appellees.

No. 17037.

Court of Civil Appeals of Texas.

Fort Worth.

June 27, 1969.

Rehearing Denied Sept. 5, 1969.

Carter, Gallagher, Jones & Magee, and Ben Warder, Jr., Dallas, for appellant.

Brown, Herman, Scott, Young & Dean, and James T. Blanton, Fort Worth, for appellees, Dorothy W. Kelley et vir.

Elton M. Hyder, Fort Worth, for appellee, Mary Louise Chastant.

## OPINION

MASSEY, Chief Justice.

We affirm summary judgments (one for defendant-appellees, in the position of defendant in the ordinary suit;—and the other for plaintiff-appellant, in the position of cross-defendant).

Plaintiff, Florine Williamson, was the surviving widow of E. P. Williamson, deceased. She will hereinafter be referred to as the widow. Defendants, Dorothy W. Kelley (joined pro-forma by her husband) and Mary Louise Chastant were the only surviving children of the deceased. They will be hereinafter referred to as the children. A part of the deceased's estate was approximately 153 acres of agricultural and pasture land in Tarrant County. This property was acquired by the deceased before he married the woman to be hereinafter referred to as the widow, but at all times during the marriage was the family homestead.

E. P. Williamson died in 1960. Thereafter a dispute arose between his widow and children. Pursuant to such dispute the children, in February of 1963, were in the position of plaintiffs in a prior suit in a District Court of Tarrant County. The widow was the defendant.

Therein a settlement agreement was effected, in disposition of the controversy of the parties over their rights in and to the deceased's estate, including the aforementioned 153 acres. The settlement agreement was approved and incorporated into the court's final judgment.

A provision of the agreement recited that all parties "recognized" the fact that the realty in question (1) was the separate property of E. P. Williamson at date of its acquisition and at date of his death, "subject only to the homestead rights of Florine Williamson (the widow)", and (2) was and constituted the rural homestead of said widow and the deceased on the date of his death, and had been such for a number of years; and that since the date of his death had continuously been in the possession of his widow, who had used it and occupied it as her homestead under her right as the surviving wife.

Further provision of the agreement read: "10. It is recognized that the defendant (the widow) shall, during the period of her homestead tenancy, be liable for the taxes * * * and she agrees to pay such taxes as they become due and payable.

11. This contract constitutes the full and final settlement of any and all property rights between the respective parties hereto, * * *."

Following the settlement and judgment of early 1963 the widow continued to reside on the premises, paying the ad valorem taxes as they became due. However, as the result of publicly announced plans to use neighboring properties as the site for a large commercial airport to serve the cities of Fort Worth and Dallas the value of all the land in the vicinity was substantially increased. As a by-product of such enhancement in land values there was a pronounced increase in the ad valorem taxes on the subject property, responsibility for the payment of which was the widow's. Total of the ad valorem tax for 1967 amounted to more than ten (10) times the amount thereof in 1960.

The widow found herself in a dilemma. She felt that if she paid the taxes as they accrued, continuing in her use of the property under the homestead right, she would be paying more for quarters than was warranted by the accommodations and benefits under the right. If she did not pay the taxes as they accrued she would be exposed to loss of the entire premises and her rights therein under tax-foreclosure.

The instant suit was filed by the widow in the advancement of a novel theory;—that under equitable principles the court could extend its "helping hand" in effecting what she asserted to be a purpose of the State Constitution, to-wit: to provide a surviving spouse with a lifetime residence and use of land for livelihood. Reference was made to the Constitution of the State of Texas, Art. XVI, "General Provisions", Sec. 50, "Homestead; Protection from Forced Sale; Mortgages, Trust Deeds and Liens", Sec. 51, "Amount and Value of Homestead; Uses", and Sec. 52, "Descent and Distribution of Homestead; Restriction on Partition". The widow represented that since the ad valorem taxes had been increased to such extent as to defeat such

constitutional intent and objective—in that as result of the tax increase the homestead had become an economic burden (rather than a benefit)—she would be entitled to receive equivalent protection and relief from the sovereign.

She suggested that the appropriate relief to which she would be entitled would be afforded through the appointment of a receiver authorized and directed to sell all or portions of the homestead property and invest the proceeds in revenue producing property,—with the income therefrom delivered over to her for her support and maintenance. By her pleadings she requested that such could and should be done "without altering, disturbing or affecting Plaintiff's homestead rights in the proceeds of such sales or in the properties in which such proceeds are invested, to the end that Plaintiff's homestead rights in the land herein described, the proceeds of the sale thereof or the properties into which same are invested, shall remain undisturbed and unaltered inasmuch as Plaintiff does not abandon or surrender any of her homestead rights therein."

The children filed pleas in abatement and and *res adjudicata* because of the prior litigation in which as part of an agreed settlement—approved by judgment—the widow's rights and responsibilities as applied to the land in question had been already resolved; that the widow's suit constituted a collateral attack. On the possibility that equitable principles might have application they also asserted that the widow did not have "clean hands" so as to entitle her to come into court seeking relief, in and by reason of the fact that she had not paid the 1967 taxes.

The children also filed motions for entry of a summary judgment in denial of the widow's claim. On hearing, their motions for such form of judgment were granted.

We see nothing which warranted the invocation of any equitable principle, and we hold that the case is controlled by

legal principles exclusively. The relief for which the widow prayed was relief which the trial court was without the power to grant. To grant such relief would be to divest the children of their title to the real estate.

■ The homestead right of the widow is a personal privilege and not an estate or interest that might be assigned or conveyed in such manner as to vest in another the right to use and occupy the property. York v. Hutcheson, 37 Tex.Civ.App. 367, 83 S.W. 895, (1904, no writ hist.).

■ The homestead right vested in the widow by provisions of law, and "recognized" by the children pursuant to the earlier settlement agreement of the parties, which agreement was incorporated into judgment, is in the nature of an estate of life-tenancy, though less broad in scope. As applied to such an estate there would be no right to dispose of any part of the corpus by the life-tenant unless he also be thereunto expressly authorized by the language of the grant. Hobson v. Shelton, 302 S.W.2d 268 (Waco Tex.Civ.App., 1957, writ ref., n. r. e.); Ellis v. Bruce, 286 S.W.2d 645 (Eastland Tex.Civ.App., 1956, writ ref., n. r. e.). The homestead right of the widow would be pursuant to Constitution and/or statute rather than created through contract. Nevertheless nothing therein enlarges the homestead right received so as to entitle the holder to convey any part thereof.

When closely analyzed it is apparent that the case upon which the widow relies affords her no comfort. Johnston v. Johnston, 276 S.W. 776 (Dallas Tex.Civ.App., 1925, no writ hist.). In that case all parties to the material action had agreed in effect that they could not pay the taxes against the property, and that it would be lost unless a sale through a receiver be made, etc. Such is not true here. In our case the children are adverse to the claim of the widow, do not agree that there is any necessity for sale, and are presumably able to pay the taxes on the subject property.

■ We are brought to the question of propriety of the summary judgment in favor of the widow (as in the position of a defendant resisting a claim of the children). The children's prayer was for relief in the nature of a declaratory judgment. They desired to have it judicially decreed that the widow has forfeited her "homestead" right in and to the subject property by reason of her failure to pay the taxes thereon; and that as a consequence of such failure—and as a consequence of seeking the relief she prayed for in her suit for a receiver—she should be treated as having abandoned her rights in and to the property.

To deny the children's claim was proper action by the trial court. They are not entitled to the desired relief under any provision of law or of contract; neither are they entitled to enforce the widow's responsibility to make payment of taxes upon the property.

■ Naturally the children would be interested in whether or not the widow should pay the taxes on the property and in their own status and entitlement should they pay them. However, such concern is not an "interest" which would entitle the children to maintain an action for declaratory relief.

The only reason the children could desire a declaratory judgment in respect thereto would be to determine the rights, if any, of a child who might pay ad valorem taxes on the property. However, neither child has paid any of these taxes. Therefore there would not, under any theory, be presented a mature litigious controversy ripe for judicial declaration upon reciprocal rights. The trial court properly granted summary judgment in respect thereto upon motion of the widow (in her capacity as cross-defendant).

Affirmed.