**UNITED STATES of America, Plaintiff,**

v.

**Harry C. JONES, Janet E. Jones, and Atco Savings & Loan Association, Defendants.**

**Civ. A. No. 92–1563 (SSB).**

United States District Court, D. New Jersey.

Feb. 15, 1995.

As Amended Feb. 23, 1995.

Harry C. Jones, Sr., Janet E. Jones, pro se.

Louis J. Bizzarri, Asst. U.S. Atty., Camden, NJ, and Charles M. Flesch, Richard Gilman, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for plaintiff.

## OPINION

BROTMAN, District Judge:

Presently before the court is the motion of plaintiff, United States government, for summary judgment. For the reasons set forth below, the government's motion is granted in part and denied in part.

## I. Factual and Procedural Background

The facts in the present matter are uncontested as they have been stipulated to by all parties. The uncontested facts are reproduced below in the same format that they appear in the Joint Final Pretrial Order entered in this matter on September 2, 1994.

1. Defendants Harry Jones and Janet Jones are married and reside at the Sherman Avenue property. They have lived at that residence since September 1977 (Harry Jones ("HJ") Dep. Tr. at 13–16; Janet Jones ("JJ") Dep. Tr. at 10–11).[1]

1. Copies of the deposition transcript pages and deposition exhibits referenced herein are annexed to the declaration of Charles M. Flesch submitted in support of the United States' motion for summary judgment.

 The relevant portions of the deposition transcript of Harry Jones, with the Exhibits annexed thereto, are collectively annexed to Mr. Flesch's declaration as Exhibit A. Similarly, the relevant portions of the deposition transcript of Janet Jones, with the Exhibits annexed thereto, are collectively annexed to Mr. Flesch's declaration as Exhibit B.

2. The defendants purchased the Sherman Avenue property on or about September 15, 1977, for the sum of $36,500.00 (a true and correct copy of the deed transferring ownership of said parcel of real property to the defendants Harry C. Jones and Janet E. Jones, is attached to the amended complaint as Exhibit A; *see also* HJ Dep. Tr. at 19 and Exhibit ("Exh.") 6 annexed thereto).

3. On September 17, 1977, defendants Harry Jones and Janet E. Jones granted a mortgage to Atco Savings and Loan Association on the Sherman Avenue property (a true and correct copy of said mortgage instrument is attached as Exh. B to the amended complaint; *see also* HJ Dep. Tr. at 18–19 and Exh. 5 annexed thereto; JJ Dep. Tr. at 19–21, and Exh. 3 annexed thereto).

4. Harry Jones and Janet Jones signed a promissory note to repay the loan made by Atco Savings and Loan which helped finance their purchase of the Sherman Avenue property. The mortgage was security against the property for the promissory note. (JJ Dep. Tr. at 22–23 and Exh. 4 (Promissory Note) annexed thereto; HJ Dep. Tr. at 17 and Exh. 4 annexed thereto).

5. During 1980 or 1981, Harry Jones joined the South Jersey Patriots, an organization or association which he described as a "constitutional study group." That association was a tax protestor group. Harry Jones was president of the South Jersey Patriots, and attended weekly meetings. Janet Jones also attended meetings of the South Jersey Patriots. (*See* JJ Dep. Tr. at 61, 62–63; *see also* HJ Dep. Tr. at 37–40).

6. Harry Jones maintains that between 1981 and 1984, he believed that his wages were exempt from taxation (*see* HJ Dep. Tr. at 36). Indeed, Harry Jones contended, and still contends, that only federal employees and citizens of the District of Columbia are subject to federal income tax (*id.* at 39–41).

7. In 1982, Harry Jones worked in the construction industry as a pipe fitter (*id.* at 8–9). In 1982, Harry Jones worked for Bechtle Power Corp. and received wages from that company *id.* at 43 and Exh. 10 (Employee's Statement annexed thereto and signed by Harry Jones).

8. In 1982, Harry Jones received a total salary of $67,396.55 from Bechtle Power Corp. for his work as a pipe fitter (*see* HJ Dep. Tr. at 52–53 and Exh. 15A annexed thereto (1982 Federal Form 1040 income tax return for Harry Jones, and specifically the W–2 Form attached thereto)).

9. In or about 1982, Harry Jones and Janet Jones filed amended Federal Form 1040 income tax returns seeking refunds of taxes paid for tax years 1979 through 1981. The purported basis for the refund claims was that Harry Jones' labor was allegedly tax exempt. The amended returns for these years triggered audits by the Internal Revenue Service ("IRS") (HJ Dep. Tr. at 46–47).

10. On or about February 8, 1983, Harry Jones submitted a Federal Form W–4 claiming that he was exempt from taxation (*id.* at 33–34 and Exh. 9 annexed thereto).

11. By letter dated March 11, 1983, the IRS notified Harry Jones and Janet Jones that their amended income tax return for 1981 was under audit, and the IRS requested them to appear for an examination (HJ Dep. Tr. at 44–46; Exh. 11 annexed thereto).

12. By letter dated March 23, 1983, the IRS notified Harry Jones and Janet Jones that their amended tax return which claimed a refund for tax year 1981 was disallowed in full. The IRS advised Mr. and Mrs. Jones that, pursuant to 26 U.S.C. § 61, his income was taxable. (*See* HJ Dep. Tr. at 46–47, 49 and Exh. 13 annexed thereto).

13. During February or March 1983, Harry Jones filed a Federal Form 1040 income tax return for tax year 1982. He filed that return under the status of "married filing separate return." On the 1982 income tax return, Harry Jones claimed that his wages were deductible or tax exempt, and reported that he owed no income tax for 1982 (HJ Dep. Tr. at 39–41, 52–54; *see* Exh. 15A, 1982 Form 1040 income tax return; *see also* Exh. 10, Jones' Employee Statement). Indeed, Mr. Jones sought a refund of the taxes that had been withheld by his employer for 1982.

14. On April 12, 1983, a delegate of the Secretary of the Treasury made a penalty assessment, in the amount of $500.00 against

Harry Jones (*see* Declaration of Russell Mattaboni at ¶ 4; certified Form 4340, Certificate of Assessments and Payments regarding Harry Jones (annexed as Exh. C to Flesch Declaration)). Notice of the $500.00 penalty assessment and a demand for payment was duly sent to Harry Jones (*see id.*).

15. By letter dated June 9, 1983, the IRS sent Mr. Jones a final demand notice seeking payment of the $500.00 penalty assessment. By letter dated June 18, 1983, Mr. Jones responded by stating that he did not owe the tax and that he challenged the right of the IRS to charge him with "a fine for [filing] a frivolous return." (*See* IRS letter dated June 9, 1983 and Mr. Jones' response thereto, collectively annexed as Exh. D to the declaration of Charles Flesch.)

16. On June 9, 1983, for consideration of $10.00 and "love and affection," defendant Harry Jones conveyed his interest in the Sherman Avenue property to his wife Janet Jones (a true and correct copy of the deed of conveyance between defendants Harry C. Jones and Janet E. Jones is annexed as Exh. C to the amended complaint; *see also* HJ Dep. Tr. at 54–56 and Exh. 16 annexed thereto; JJ Dep. Tr. at 57–59 and Exh. 13 annexed thereto). After the conveyance of the Sherman Avenue property, Harry Jones continued to reside at the premises (*see* JJ. Dep. Tr. at 60). The June 9, 1983 deed was recorded on July 11, 1983 (*see* Exh. 16, page 4 to HJ. Dep. Tr.).

17. Neither Harry Jones nor Janet Jones notified Atco Savings and Loan Association of the transfer of title to Janet Jones. Harry Jones, however, remained indebted to Atco Savings and Loan Association for the mortgage payments by virtue of the promissory note he had signed (JJ Dep. Tr. at 67–68, 70; HJ Dep. Tr. at 56).

18. After the conveyance of the Sherman Avenue property to Janet Jones, Mr. Jones continued to make payments to Atco Savings & Loan Association on the mortgage until about 1988. Thereafter, Mr. Jones' mother made payments on the mortgage on his behalf (*see* HJ Dep. Tr. at 25–28).

19. After the conveyance of the Sherman Avenue property to Janet Jones, Mr. Jones owned no property (*see* JJ Dep. Tr. at 68–70).

20. In response to what he termed as a proposed IRS notice of deficiency for tax year 1982, on March 12, 1984, Harry Jones wrote the IRS advising that his wages were not income and not taxable (HJ Dep. Tr. at 64, Exh. 23 annexed thereto).

21. On June 14, 1984, the IRS wrote Harry Jones providing him with its examination report regarding an income tax deficiency for tax year 1982 and proposing an assessment of various penalties (HJ Dep. Tr. at 65–66 and Ex. 24 annexed thereto). In response, Harry Jones denied the audit findings (HJ Dep. Tr. at 66–67 and Exh. 25 annexed thereto).

22. By letter dated April 5, 1985, the IRS sent Harry Jones a notice of income tax deficiency for tax year 1982. In that notice (which incorporated the aforesaid examination report in part), the IRS asserted that Harry Jones was liable for an income tax deficiency, in the amount of $26,975.28, and was also liable for various penalties as set forth therein (HJ Dep. Tr. at 69, Exh. 25 (IRS Notice of Deficiency) annexed thereto).

23. By letter dated April 15, 1985, Harry Jones wrote the IRS admitting that he received the Notice of Deficiency. In his April 15 letter, Jones set forth various tax protestor statements, including asserting that the IRS had no authority to issue him the Notice of Deficiency (*see* HJ Dep. Tr. at 69, 71–72, and Exh. 27 annexed thereto).

24. Harry Jones did not petition the U.S. Tax Court to contest the IRS' April 5, 1985 Notice of Deficiency (HJ Dep. Tr. at 71).

25. A delegate of the Secretary of the Treasury made assessments against defendant Harry C. Jones for additional tax and penalties for the tax year ending December 31, 1982, on the dates and in the amounts set forth below:

| Type of Assessment | Assessment Date | Amount Assessed | Internal Revenue Code Section |
|---|---|---|---|
| Miscellaneous Penalty | 4/12/83 | $ 500.00 | |
| Income Tax | 10/21/85 | $ 26,975.28 | |
| Negligence Penalty | 10/21/85 | $ 6,055.66 | 6653(a)(1) & (2) |
| Estimated Tax Penalty | 10/21/85 | $ 2,143.80 | 6654 |
| Substantial Understatement of Income Tax Penalty | 10/21/85 | $ 2,697.53 | 6651. |

(*See* Amended Complaint; Declaration of Indebtedness by Russell Mattaboni, dated May 13, 1994, at ¶ 4, submitted in support of U.S. Motion For Summary Judgment; *see also* certified Form 4340, Certificate Of Assessments and Payments, annexed as Exh. C to Flesch declaration).

26. Notices of the assessments, referred to in paragraph 25, above, and demands for payment were duly sent to Harry C. Jones (Declaration of Russell Mattaboni at ¶ 5; *see also* certified Form 4340, Certificate of Assessments and Payments).

27. Statutory interest, penalties and costs also have accrued and continue to accrue on the unpaid balance of the assessments made against defendant Harry C. Jones (Declaration of Russell Mattaboni at ¶¶ 6, 7).

28. Since the date of the October 21, 1985 assessments, payments in the amount of $4,199.20 have been credited to the amounts assessed against defendant Harry C. Jones (*id.* at ¶ 8).

29. As of May 31, 1994, $66,644.32 in interest had accrued on the unpaid tax liabilities (*id.* at ¶ 9).

30. As of May 31, 1994, there was due and owing to the United States from Harry C. Jones the total amount of $107,049.99. That amount is calculated as follows: assessed tax ($26,975.28), plus assessed penalties ($11,396.99), less the credits for payments ($4,199.20), plus failure to pay tax penalty ($6,196.60) accrued on the unpaid tax, plus interest ($66,644.32), plus ($36.00) lien filing fees (*id.* at ¶ 10).

31. On March 11, 1994, the mortgage of Atco Savings & Loan Association on the subject real property was satisfied (*see* copy of letter dated May 11, 1994, from counsel for the bank, with Satisfaction attached thereto, annexed as Exh. E to the declaration of Charles M. Flesch).

32. On April 25, 1994, William J. Kennedy, a real estate appraiser, inspected the Sherman Avenue property. He recently issued an appraisal report of the property which estimated the fair market value of the Sherman Avenue property to be $108,000, and its rental value to be $750.00 per month (*see* Uniform Residential Appraisal Report annexed as Exh. F to the declaration of Charles M. Flesch).

33. Defendants Harry and Janet Jones are the same age.

34. The value of Harry Jones' life estate and survivorship interest in the subject real property is equivalent to ½ of the fair market value of the property.

35. For all her married life, Janet Jones has been a housewife with no separate income (JJ Dep. Tr. at 8–9; HJ Dep. Tr. at 24–25).

## II. Discussion

As there appear to be few, if any, issues of material fact, the only questions remaining in this summary judgment motion are legal ones for the court to decide. The court will address the legal questions presented and resolve the present case on this motion for summary judgment.

### A. Count I—Judgment on Assessed Taxes

The government seeks summary judgment on Count I of its Amended Complaint to recover on various tax assessments made against defendant Harry C. Jones ("defendant") based on income taxes that the defendant failed to pay for the tax year ending December 31, 1982. In his Opposition to Summary Judgment, defendant Jones argues that the court does not have subject matter jurisdiction over the government's claim. Defendant makes references to various affidavits he has filed with the court as grounds for his argument. Upon review of such affidavits and other papers filed by the defendant, the court is unable to find any viable basis for challenging this court's jurisdiction.

Defendant's papers state numerous incoherent arguments which the court is unable to decipher. The arguments that the court is able to identify are similar to those raised in defendant's Motion to Dismiss for Failure to State a Cause of Action and defendant's Motion to Dismiss for Lack of Venue and Jurisdiction and Unlawful Standing to Prosecute. Basically, defendant alleges that the govern-

ment's failure to notify him under which law and regulations he is being sued and the government's failure to identify the type of tax being assessed against him amount to a violation of Due Process and strip this court of subject matter jurisdiction. Defendant further argues that, in bringing its suit, the government failed to follow the necessary procedures mandated by the Constitution, statute and regulations. Additionally, defendant alleges that because he is neither an employee of the federal government nor a resident of the District of Columbia, his income is not subject to federal taxation.

All of the defendant's arguments have been previously addressed and rejected by the court. *See* court's Order dated Sept. 27, 1993 denying defendant's motion to dismiss for lack of venue and jurisdiction and unlawful standing; court's Order dated Jan. 13, 1994 denying defendant's motion for reconsideration of the court's Sept. 27, 1993 order; court's opinion dated Feb. 6, 1995 addressing defendant's three motions to dismiss as beyond the statute of limitations and for failure to state a claim for which relief can be granted. This court has jurisdiction over the present action pursuant to 28 U.S.C. §§ 1340 and 1345, in conjunction with 26 U.S.C. §§ 7402(a) and 7403.[2] Furthermore, courts have routinely rejected arguments such as those made by defendant Jones with regard to being exempt from federal taxation, and held that the federal government has the power to tax the income of all United States citizens. *United States v. Connor,* 898 F.2d 942, 943–44 (3d Cir.) (Congress properly exercised its power to tax income, wages are income within the meaning of the Sixteenth Amendment, and arguments that wages are not taxable income have been unequivocally rejected), *cert. denied,* 497 U.S. 1029, 110 S.Ct. 3284, 111 L.Ed.2d 793 (1990); *United States v. Freeman,* 71 A.F.T.R.2d 93–1272, 1275, 1993 WL 179115 (D.N.J.1993) (federal courts routinely reject tax protester arguments; the government has power to tax the income of all its citizens) (citing *Brushaber v. Union Pac. R.R.,* 240 U.S. 1, 12–19, 36 S.Ct. 236, 239–42, 60 L.Ed. 493 [3 A.F.T.R. 2926] (1916) (federal income tax imposed on citi-

zens throughout nation) and *United States v. Sloan,* 939 F.2d 499, 501 [68 A.F.T.R.2d 91–5351] (7th Cir.1991) (all individuals, freeborn and nonfreeborn, natural and unnatural alike, must pay federal income tax on their wages, regardless of whether they have requested, obtained or exercised any privilege from federal Government), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 940, 117 L.Ed.2d 110 (1992)), *aff'd,* 16 F.3d 406 (3d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 2150, 128 L.Ed.2d 876 (1994). *See also Wilcox v. Commissioner,* 848 F.2d 1007, 1008 (9th Cir.1988) (rejecting claims that wages are not income and that paying taxes is voluntary); *Coleman v. Commissioner,* 791 F.2d 68, 70 (7th Cir. 1986) (rejecting arguments that wages are not taxable, that wages may not be taxed pursuant to the Sixteenth Amendment, and that the income tax is a "taking" in violation of the Fifth Amendment); *Capps v. Eggers,* 782 F.2d 1341 (5th Cir.1986) (rejecting claim that wages are not taxable as income) (citations omitted); *Connor v. Commissioner,* 770 F.2d 17, 20 (2d Cir.1985) (argument that wages are not taxable income is so frivolous that it is sanctionable).

 The present action to reduce to judgment federal tax assessments made by the government involves defendant's income tax liability for the tax year of 1982. In paragraph 10 of the Amended Complaint, the government lists the dates on which the alleged assessments were made and the unpaid balances due on those dates. In support of its motion for summary judgment, the government has submitted a certified Form 4340, Certificate of Assessments and Payments. *See* Brief in Support of United States' Motion for Summary Judgment, Exhibit C to the Declaration of Charles M. Flesch. This Form identifies all relevant assessments made by the Internal Revenue Service against the defendant and any credits made to such assessments.

 A Certificate of Assessments and Payments is entitled to a presumption of correctness. *Freck v. Internal Revenue Service,* 37 F.3d 986, 991–92 n. 8 (3d Cir.1994)

---

2. The government is authorized to file this action against defendant pursuant to 26 U.S.C. §§ 7401

and 7403(a). Proof of such authorization has previously been produced to the court.

("Assessments are generally presumed valid and establish a *prima facie* case of liability against a taxpayer") (citations omitted); *United States v. Mazzara*, 530 F.Supp. 1380, 1382 (D.N.J.1982) (affidavit by I.R.S. officer detailing defendant's tax liability is entitled to a presumption of correctness) (citing *Psaty v. United States*, 442 F.2d 1154, 1159 (3d Cir.1971)), *aff'd*, 722 F.2d 733, 736 (3d Cir. 1983); *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir.1992) ("For purposes of granting summary judgment, a Certificate of Assessments and Payments is sufficient evidence that an assessment was made in the manner prescribed by § 6203 and Treas.Reg. 301.6203–1"); *Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir.) (Certificate of Assessments and Payments is presumptive proof of a valid assessment and is frequently used to prove that an assessment has been made), *cert. denied*, ⸻ U.S. ⸻, 113 S.Ct. 261, 121 L.Ed.2d 191 (1992); *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir.1992) (Certificate of Assessments and Payments can serve as proof that assessments were actually made); *McCarty v. United States*, 929 F.2d 1085, 1089 (5th Cir.1991) (Certificate of Assessments and Payments is admissible evidence for purposes of summary judgment); *United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir.) (Certificate of Assessments and Payments submitted by the government is accepted as presumptive proof of a valid assessment), *cert. denied*, 493 U.S. 975, 110 S.Ct. 498, 107 L.Ed.2d 501 (1989); *United States v. Nuttall*, 713 F.Supp. 132, 135 (D.Del.) (assessments listed in Form 4340 are given presumptive effect), *aff'd*, 893 F.2d 1332 (3d Cir.1989). Consequently, the government has established a *prima facie* case by providing the court with this Certificate. *Psaty v. United States*, 442 F.2d 1154, 1159–60 (3d Cir.1971); *Nuttall*, 713 F.Supp. at 135. At trial, the burden of production and persuasion, at this point, would shift to the defendant. *Psaty*, 442 F.2d at 1160. However, because the case is presently before the court on a summary judgment motion, the defendant needs only to establish the existence of a genuine issue of material fact with regard to the validity or correctness of the assessments. *Long*, 972 F.2d at 1181 n. 9 ("taxpayer has the burden of going forward with evidence and the burden of persuasion to overcome the presumption attaching to the Forms 4340") (citing *Psaty v. United States*, 442 F.2d 1154, 1160 (3d Cir.1971)); *United States v. Carson*, 741 F.Supp. 92, 94 (E.D.Pa. 1990) (once presumption of correctness of assessments is established by Certificate of Assessments and Payments, burden of production and persuasion shifts to defendant taxpayer to show any errors) (citing *Psaty*, 442 F.2d at 1158–60); *Nuttall*, 713 F.Supp. at 135.

■ In his opposition papers, the defendant does not question either the correctness or the validity of the assessments. The defendant merely makes references to the statute of limitations argument raised in his Motion to Dismiss Count I as Beyond the Statute of Limitations. Defendant argues that the present collection action was brought after the statute of limitations had expired. Mr. Jones claims that letters sent to him by the government on June 9, 1983 and June 14, 1984 constitute the actual assessments from which the statute of limitations for any collection action should begin to run. *See* Exhibits A and B to Defendant's Motion to Dismiss Count I Beyond Statute of Limitations. However, the June 9, 1983 letter is relevant only to a $500 penalty assessment, the government's claim to which has been dismissed. The June 14, 1984 letter cannot be construed as an assessment by the government. This letter neither assesses a deficiency against the defendant, nor does it demand that the defendant make payment in a specified amount to the I.R.S. The letter merely explains that the I.R.S. believes that an adjustment of Mr. Jones' tax liability is necessary, and details the procedures Mr. Jones should follow if he disagrees with the findings of the I.R.S. Additionally, the letter explains that the defendant's case will only be processed on the basis of this proposed adjustment if the I.R.S. does not hear from the defendant in 30 days. By no means can this letter be adjudged as an assessment against the defendant.

The above constitutes the only challenge made by defendant to the government's Certificate of Assessments and Payments. Because this challenge bears no merit and be-

cause defendant Jones has offered no evidence contesting the validity or correctness of the government's Certificate, there exists no issue of material fact preventing entry of judgment in favor of the government. Consequently, the court will enter judgment against defendant Jones on Count I of the government's Amended Complaint in the amount of $107,049.99, plus interest that has accrued and will accrue thereon from May 31, 1994, until this judgment is fully paid.[3]

### B. Count II—Fraudulent Conveyance

In Count II, the government seeks to set aside as a fraudulent conveyance a June 9, 1983 transfer of property by Mr. Jones to his wife, Janet Jones. Prior to the transfer, Mr. and Mrs. Jones owned the property located at 165 Sherman Avenue, Atco, New Jersey as tenants by the entirety. On June 9, 1983, Mr. Jones transferred his interest in the property to his wife for $10.00 and "love and affection." The government asserts that because this transfer was not supported by fair consideration, was intended to defraud creditors, and was made at a time when defendant Jones was insolvent, the transfer should be set aside under the New Jersey Fraudulent Conveyance Act. Defendant Jones opposes the government's motion for summary judgment and argues the following: (1) the government's claim is beyond the statute of limitations and thus fails to state a claim for relief[4]; (2) the government's claim is vague and thus fails to state a claim for relief;[5] (3) the transfer was not intended to defraud any creditors; and (4) the defendant was insolvent prior to the transfer in question. Defendant Janet Jones opposes the government's motion on the following grounds: (1) the transfer was made without any intent to defraud, hinder, delay or evade creditors; (2) the transfer was made as part of a marriage reconciliation in order to provide security to Mrs. Jones and ensure that she would not be left without a place to live; and (3) the

government's claim is beyond the statute of limitations.

Because the allegedly fraudulent conveyance took place in 1983, the court must analyze the government's claim under the New Jersey Fraudulent Conveyance Act (currently repealed), and not under the more recently enacted Uniform Fraudulent Transfer Act which became prospectively effective as of January 1, 1989. *Official Unsecured Creditors' Committee v. Rachles (In re S. Rachles, Inc.)*, 131 B.R. 782, 787–89 (Bankr.D.N.J. 1991); *Fleet v. Rhode (In re Fleet)*, 122 B.R. 910, 915–16 (Bankr.E.D.Pa.1990). Section 25:2–10 of the New Jersey Fraudulent Conveyance Act provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.

N.J.STAT.ANN. § 25:2–10 (West 1940). A "creditor" is defined broadly as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent." N.J.STAT.ANN. § 25:2–7.

The issue before the court is whether the United States was a creditor of defendant Jones at the time of the property transfer. The United States is deemed a creditor of a taxpayer as of the date that the obligation to pay income taxes accrues. *United States v. Bushlow*, 832 F.Supp. 574, 581 (E.D.N.Y.1993); *United States v. Mantarro*, 72 A.F.T.R.2d 93–6428, 1992 WL 551483 (N.D.Ohio 1992); *United States v. Klayman*, 736 F.Supp. 647, 649 (E.D.Pa.1990); *United States v. St. Mary*, 334 F.Supp. 799, 803 (E.D.Pa.1971). Some courts have said that tax liabilities, even if unassessed, are deemed due and owing at the close of the taxable year. *Edelson v. Commissioner*, 829 F.2d 828, 833–34 (9th Cir.1987) (citing *In re Ad–*

---

**3.** This judgment does not contain any amounts attributable to the $500 penalty assessment made on April 12, 1983 by the I.R.S. against Mr. Jones.

**4.** This argument was addressed and rejected by the court's opinion dated February 6, 1995 dealing with defendant's motions to dismiss.

**5.** This argument was likewise addressed and rejected by the court's February 6, 1995 opinion.

*Yu Elec., Inc.*, 71–1 USTC (CCH) ¶ 9132, 1968 WL 169 (1968)). Other courts has stated that taxes accrue on the date the tax returns are due to be filed. *Mantarro*, 72 A.F.T.R.2d 93–6428; *St. Mary*, 334 F.Supp. at 803. Thus, the government became Mr. Jones' creditor either at the end of 1982, or on April 15, 1983, the deadline for Mr. Jones to file his tax return. Regardless of which view is adopted, defendant Jones' taxes were obligations due and owing by June 9, 1983, the date of the transfer. Because the fraudulent conveyance statute defines "creditors" broadly to include persons holding contingent and unmatured claims and because the government is deemed a creditor when the obligation to pay taxes accrues, the government, in the instant matter, was a creditor of defendant Jones at the time of the transfer.

■ Section 25:2–10 of the New Jersey Fraudulent Conveyance Act also requires the debtor to either be insolvent at the time of the transfer or to be rendered insolvent as a result of the transfer. Section 25:2–8 provides that "[a] person is insolvent when the present fair saleable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." This definition of insolvency "can be met merely by showing that, at the crucial date of transfer, the debtor's liabilities exceeded the debtor's assets." *In re Fleet*, 89 B.R. at 424; *Zucker v. Silverstein*, 134 N.J.Super. 39, 53, 338 A.2d 211 (App.Div.1975) (a person is insolvent "when he cannot pay his debts as they become due from the present fair saleable value of his assets"); *Johnson v. Lentini*, 66 N.J.Super. 398, 404, 169 A.2d 208 (Ch.Div. 1961) (finding debtors insolvent when the value of their assets is significantly less than the total debt owed). With full understanding of the definition of insolvency, defendant Jones, in his brief, admitted that he was insolvent prior to the date of the transfer to his wife. Defendant's Opposition to Summary Judgment, at 4.[6] Furthermore, according to the deposition of Janet Jones,

defendant Jones owned no assets after the June 9, 1983 transfer of the subject property to Janet Jones. JJ Dep. Tr. at 68. At this same time, however, defendant Jones was indebted to the government for the income taxes he failed to pay on his earnings in 1982, estimated at approximately $27,000. *See* Letter from I.R.S. to Harry Jones dated June 14, 1984, attached as Exh. 24 to the Deposition of Harry Jones. Because neither Mr. Jones nor Mrs. Jones dispute Harry Jones' insolvency, the court concludes that defendant Jones was insolvent on June 9, 1983 when he transferred his only asset to his wife.

■ In order to find that Mr. Jones' transfer was a fraudulent conveyance, the government must also show that the transfer was not supported by fair consideration. Section 25:2–9 of the Fraudulent Conveyance Act defines "fair consideration" as follows:

Fair consideration is given for property or obligation:

a. When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or

b. When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.

In the present case, Mr. Jones transferred property to his wife for $10 and "love and affection." Such transfers between family members are scrutinized closely and with suspicion. *ESB, Inc. v. Fischer*, 185 N.J.Super. 373, 376, 448 A.2d 1030 (Ch.Div.1982) (citing *Coles v. Osback*, 22 N.J.Super. 358, 364, 92 A.2d 35 (App.Div.1952); *Haberstroh v. De Marco*, 2 N.J.Super. 429, 432, 64 A.2d 380 (Ch.Div.1949)). The transfer at issue was between family members, for nominal consideration and left Mr. Jones with no assets and significant debt. Furthermore, Mr. Jones continued to reside on this proper-

---

**6.** Specifically, defendant states the following:
 Defendants understanding of "insolvent" means that you owe more than you are worth. Defendant was in that position before said

transfer, so Defendant was insolvent even before said transfer.
Defendant's Opposition to Summary Judgment, at 4.

ty following the transfer. The court must keep in mind that "the purpose of the fraudulent conveyance statute is to prevent insolvent debtors from placing their property beyond the reach of their creditors while at the same time enjoying the benefits thereof." *Mazzara,* 530 F.Supp. at 1383 (citing *Townsend v. McGrain,* 43 N.J.Super. 438, 441, 128 A.2d 875 (Ch.Div.1957)). The only stated reason for the transfer was to provide security to Mrs. Jones ensuring that she always has a place to live. While this may be a legitimate motive for the transfer, such rationale does not constitute "fair consideration" within the purview of the fraudulent conveyance statute. *ESB, Inc.,* 185 N.J.Super. at 378, 448 A.2d 1030. Additionally, proof of actual intent to defraud is not required under N.J. STAT.ANN. § 25:2–10. The court is left with no choice but to conclude that the transfer from Mr. Jones to Mrs. Jones, unsupported by fair consideration and made at a time when Mr. Jones was insolvent, is a fraudulent conveyance which must be set aside under § 25:2–10 of the New Jersey Fraudulent Conveyance Act with regard to the plaintiff creditor.[7]

### C. Count III—Foreclosure Sale as a Remedy

▮ In Count III, the government seeks a foreclosure sale of the Jones' home to satisfy the tax liens placed against Mr. Jones' interest in the property. Pursuant to § 6321 of the Internal Revenue Code, the government of the United States obtains a lien against "all property and rights to property, whether real or personal" of any person who neglects or refuses to pay their taxes. 26 U.S.C. § 6321. Section 6322 provides that such lien arises automatically on the date of the assessment and continues until the tax liability is satisfied or the statute of limitations bars enforcement of the lien. 26 U.S.C. § 6322; *United States v. National Bank of Commerce,* 472 U.S. 713, 719, 105 S.Ct. 2919, 2923–24, 86 L.Ed.2d 565 (1985); *United*

States v. McDermott, —— U.S. ——, ——, 113 S.Ct. 1526, 1527, 123 L.Ed.2d 128 (1993). The broad character of the language "all property and rights to property" appearing in § 6321 evidences Congress' intent that any and all of a taxpayer's interests in property be reachable. *National Bank of Commerce,* 472 U.S. at 719–20, 105 S.Ct. at 2923–24.

▮ To determine the nature of the legal interest the taxpayer has in the subject property, the court must apply state law. *Id.* at 722, 105 S.Ct. at 2925; *Aquilino v. United States,* 363 U.S. 509, 513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960) (quoting *Morgan v. Commissioner,* 309 U.S. 78, 82, 60 S.Ct. 424, 426–27, 84 L.Ed. 585 (1940)). "This follows from the fact that the federal statute 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.'" *National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. at 2925 (quoting *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958)). The consequences that attach to the interests are "a matter left to federal law." *United States v. Rodgers,* 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983); *accord National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. at 2925.

Because the transfer from Mr. Jones to Mrs. Jones has been set aside as a fraudulent conveyance with regard to the government, Mr. and Mrs. Jones are returned to their status as tenants by the entirety. *ESB, Inc.,* 185 N.J.Super. at 379, 448 A.2d 1030. A tenancy by the entirety vests each spouse with an undivided one-half interest in the home and a right of survivorship. *Id.* The spouses hold the property as tenants in common during their joint lives, and own a right of survivorship entitling each to become the sole owner of the property upon the death of the other spouse. *Newman v. Chase,* 70 N.J. 254, 259, 359 A.2d 474 (1976). "[A]lthough the interests of husband and wife [are] 'es-

---

7. The court is not required to decide whether defendant Jones possessed actual intent to hinder, delay or defraud any creditors in order to set aside the fraudulent conveyance under N.J.STAT ANN § 25:2–13. Although such a specific finding is not required, the court notes that the present facts, specifically absence of fair consid-

eration, conveyance to a family member, defendant Jones' continued use and enjoyment of the transferred property, and his inability to pay the plaintiff creditor, are sufficient to infer an actual intent to defraud creditors. *Edelson,* 829 F.2d at 833 (applying New Jersey law).

sentially' those of tenants in common, nevertheless during coverture each [is] seized of the indivisible whole of the property" therefore permitting no partition of the spouse's interests. *Newman,* 70 N.J. at 262, 359 A.2d 474 (citations omitted). "While the rights of each spouse are alienable, the right of ownership is 'indestructible by unilateral action.'" *United States v. Diemer,* 859 F.Supp. 126, 131 (D.N.J.1994) (citing *State v. U.S. Currency,* 239 N.J.Super. 241, 246, 570 A.2d 1304 (Sup.Ct.1990)). "[A]lthough a debtor's interest in property held as a tenant by the entirety may be reached by his or her creditors, the remedy of partition is not automatically available to a purchaser at execution sale." *Newman,* 70 N.J. at 262, 359 A.2d 474; *see Freda v. Commercial Trust Co.,* 118 N.J. 36, 45, 570 A.2d 409 (1990). Because tenancies by the entirety operate to protect marital assets during coverture and as security for a spouse upon the death of the other, New Jersey courts are reticent to permit any interference by creditors with property owned as a tenancy by the entirety, especially where this entails dispossessing a family of its home. *Freda,* 118 N.J. at 46, 570 A.2d 409; *Newman,* 70 N.J. at 265–66, 359 A.2d 474. "Because a tax lien extends only so far as the taxpayer's interest in the property to which it attaches, *U.S. v. Durham Lumber Co.,* 363 U.S. 522, 526, 80 S.Ct. 1282, 1284, 4 L.Ed.2d 1371 (1960), the [government's] lien attached to an undivided one-half interest" held by Mr. Jones in the Jones' home, subject to Mrs. Jones' right of survivorship. *Diemer,* 859 F.Supp. at 131.

The government takes the position that federal law controls the consequences that attach to Mr. Jones' interests and that 26 U.S.C. § 7403 permits the government not only to foreclose on Mr. Jones' interests in the property, but to sell the entire property to satisfy its tax lien. Brief in Support of United States' Motion for Summary Judgment, at 27. Section 7403(a) provides that, in the event a taxpayer is delinquent, the government can enforce its lien and subject "any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403(a). Furthermore, § 7403(c) provides that the court "*shall* ...

determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, *may* decree a sale of such property ... and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c) (emphasis added).

Although the Supreme Court in *United States v. Rodgers* interpreted § 7403 broadly to encompass the sale of the entire property in certain circumstances as long as other interest holders in the property are adequately compensated, the Supreme Court expressly recognized that district courts have a degree of discretion in determining whether or not the government should be entitled to sell the entire property. *Rodgers,* 461 U.S. at 693–94, 706, 103 S.Ct. at 2142–43, 2149. The *Rodgers* Court mentioned a number of factors which, among others, courts may consider in making the determination as to whether or not to order the sale of the entire property when the debtor only holds a partial interest in that property.

The first factor mentioned by the Supreme Court was a consideration of the extent to which the government would be financially prejudiced if it was limited only to the sale of the partial interest rather than the entire property. *Id.* at 710, 103 S.Ct. at 2151. In the present matter, the sale of solely Mr. Jones' interest in the subject property would yield little, if any, value. The sale of the entire home would attract a larger group of purchasers and likely bring in a much higher price. However, the financial prejudice to the government in the instant case must be considered in conjunction with the amount of profits that the government would have available for satisfaction of its tax lien. The *Rodgers* Court made clear that the non-debtors' interests in the property must be properly compensated. *Id.* at 699, 103 S.Ct. at 2145–46 (the government should not receive from the sale proceeds any more than what they are entitled to). Mrs. Jones' interest in the property is that of a tenant in common with a right of survivorship. At the very least, this would entitle her to 50% of the fair

market value of the home.[8] As a result, the government's recovery would be limited to an amount equal to the sale price of the property less $54,000 (half the estimated fair market value of the home). Because the government's ultimate recovery from the sale would be greatly diminished due to the need to compensate Mrs. Jones for her interest in the home, the degree to which the government is prejudiced by a disallowance of the sale of the entire property is accordingly diminished.

The second factor discussed by the *Rodgers* Court is "whether the third party with a nonliable separate interest in the property would, in the normal course of events . . . have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors." *Id.* at 710–11, 103 S.Ct. at 2151. Mrs. Jones had every right to expect that her home would not be disturbed by any of her husband's creditors. If the conveyance of June 9, 1983 was not set aside, Mrs. Jones, as a sole owner of the property, would have a legally legitimate expectation that no other person or entity could disturb her ownership of the property. Additionally, as owner of property as a tenant by the entirety, Mrs. Jones could legitimately believe that the family home would be protected against her husband's creditors by virtue of New Jersey's special treatment of this type of property ownership. Because the purposes behind a tenancy by the entirety are to protect marital assets during coverture and provide security for a spouse upon the death of the other, Mrs. Jones had sufficient legal basis to believe that her home would not be susceptible to a forced sale. *See Freda,* 118 N.J. at 46, 570 A.2d 409; *Newman,* 70 N.J. at 265–66, 359 A.2d 474.

The third and fourth factors set out by the Supreme Court in *Rodgers* are the prejudice to the nonliable interest holder in terms of personal dislocation costs and undercompensation of interest, and the relative character and value of all the interests held in the property. *Rodgers,* 461 U.S. at 711, 103 S.Ct. at 2151–52. Mrs. Jones has resided at the property in question for more than 17 years. Mrs. Jones has always been a housewife, and thus, has not worked outside the home since her marriage in 1969. To dispossess an unemployed individual who has no source of income and who still has a minor son residing with her at her home in order to satisfy a debt owed solely by her husband presents a grossly unfair solution and one that violates New Jersey's policy of protecting the marital home. Furthermore, as discussed previously, because Mrs. Jones has a right of survivorship with regard to the subject property, she could ultimately become the sole owner of her home. Based on life expectancy tables, Mrs. Jones is likely to outlive her husband and thus obtain a fee interest in the home. Faced with this possibility, the court believes that an amount totaling half the fair market value of the home is not sufficient to compensate Mrs. Jones' interests in the property.[9]

An analysis of these factors leads the court to conclude that a sale of the entire property should not be allowed in the present case. The court acknowledges the government's strong interest in the efficient collection of delinquent taxes. However, the taxes at issue here are owed solely by Mr. Jones while the property the government requests to sell is owned by Mr. and Mrs. Jones as tenants by the entirety. Because allowance of the requested sale will violate Mrs. Jones' legally recognized expectations, result in the disloca-

---

**8.** The court believes that the valuation of an interest such as a right to survivorship presents a difficult problem because such a right can leave a spouse either with absolutely nothing or a fee interest in the entire property, depending on which spouse predeceases the other. Thus, unlike a life estate, the value of which can be predicted with the use of life expectancy tables, the imprecise nature of an interest such as a right of survivorship makes it less susceptible of valuation. Although the court notes the existence of such a problem, it need not deal with it

in the present matter because the parties have stipulated that each spouse's interest is equal to half of the fair market value of their home. *See* ¶ 34 of the Joint Final Pretrial Order dated Sept. 2, 1994, at 11.

**9.** The weight the court is able to attribute to the issue of Mrs. Jones' undercompensation is diminished in view of the fact that the Jones' stipulated that each of their interests is worth half the fair market value of the home.

tion of an unemployed mother and her minor son, and severely offend New Jersey's interest in protecting the marital home, the court believes that the equities of the present case strongly dictate against the sale of the Jones' home. *See Diemer*, 859 F.Supp. at 132 (where non-debtor spouse remains in possession of property and still has her right of survivorship, the IRS lien against the debtor spouse's interest in the property remains subject to the non-debtor spouse's right of survivorship).

Further supporting the court's decision is the fact that the *Rodgers* case is factually distinguishable from the present matter. In *Rodgers*, the Supreme Court held that the government may sell the nondelinquent spouse's homestead estate [10] to satisfy the tax debt of the delinquent spouse as long as the interests of the nondelinquent spouse are fully compensated. *Rodgers*, 461 U.S. at 680, 103 S.Ct. at 2135–36. A tenancy by the entirety is an interest quite distinct from the homestead right created by the Texas Constitution. First of all, a homestead right does not represent an ownership interest in property, but is more like a personal right or privilege belonging to a spouse. *Hunter v. Clark*, 687 S.W.2d 811, 815 (Tex.Ct.App. 1985); *Western Fire Ins. Co. v. Sanchez*, 671 S.W.2d 666, 669 (Tex.Ct.App.1984); *Williamson v. Kelley*, 444 S.W.2d 311, 314 (Tex.Civ. App.1969). That is, a homestead right vests in a spouse whether or not that spouse has any ownership interest in the property at all. *Western Fire Ins.*, 671 S.W.2d at 668 (whether actual property is owned by the wife only, by the husband only, or represents their community property, each spouse can have a homestead right in the property). Second, a

spouse who predeceases the other spouse can still divest his ownership rights in the property or let them pass by intestate succession, subject to the surviving spouse's homestead right. *Hunter*, 687 S.W.2d at 814. Additionally, the surviving spouse does not receive anything akin to a right of survivorship, but instead receives "a personal privilege with the attributes and incidents of a life estate." *Id.* at 815; *Western Fire Ins.*, 671 S.W.2d at 668; *Fiew v. Qualtrough*, 624 S.W.2d 335, 337 (Tex.Ct.App.1981); *Williamson*, 444 S.W.2d at 314.

The attributes of a homestead right created by the Texas Constitution and recounted above do not in any way resemble the characteristics of a tenancy by the entirety. The only common thread between the tenancy by the entirety and the homestead right is their common purpose of protecting the family home. In contrast to the homestead right, a tenancy by the entirety is: (1) a form of ownership in property; (2) does not arise unless both spouses are owners of the property; (3) is accompanied by a right of survivorship which grants the surviving spouse a fee interest in the entire property (not a personal privilege akin to a life estate); and (4) is a right which cannot pass by intestate succession or will of the predeceased spouse. Given the great disparity between the tenancy by the entirety and the homestead estate, the *Rodgers* holding cannot be controlling on the present facts.[11]

Based on the analysis set forth above, the court holds that while the tenancy by the entirety or Mrs. Jones' right of survivorship remains in tact, the government cannot satisfy its tax lien against Mr. Jones' property interests by forcing a foreclosure sale of the

---

**10.** The Supreme Court was addressing a homestead interest created by the Texas Constitution.

**11.** The *Rodgers* Court, in footnote 31, distinguished tenancies by the entirety because in some states, a lien cannot attach to property held as a tenancy by the entirety. *Rodgers*, 461 U.S. at 702–03 n. 31, 103 S.Ct. at 2147. The Supreme Court did not address the type of tenancy by the entirety adopted by New Jersey law. Furthermore, it must be pointed out that the decision in *Rodgers* was a plurality decision in which the dissent presented a very strong view holding

that 26 U.S.C. § 7403 does not give the government "the power to sell jointly owned property if an unindebted co-owner enjoys an *indestructible* right to bar a sale and to continue in possession." *Rodgers*, 461 U.S. at 713, 103 S.Ct. at 2153 (emphasis in original). Because the composition of the Supreme Court has greatly altered since the *Rodgers* opinion, the only remaining members being those who comprised the dissent, it is not clear whether the Supreme Court would adopt a similar disposition on the issues if faced with the same questions today.

entire Jones property.[12] However, "a federal tax lien ... is not self-executing." *National Bank of Commerce*, 472 U.S. at 720, 105 S.Ct. at 2924. A lien foreclosure suit is certainly one method of affirmatively enforcing collection of unpaid taxes. *Id.* Although a foreclosure of the entire property is disallowed, the government seeks alternative remedies in their Amended Complaint and requests a writ of execution and levy by U.S. Marshal against Harry Jones' interest in the property, and that Janet Jones be required to pay to the government one-half of the imputed rental value of the property which will be credited against Mr. Jones' liability.

The court sees no reason why the plaintiff creditor should receive treatment different from that accorded a purchaser at a judgment sale. *ESB, Inc.*, 185 N.J.Super. at 380, 448 A.2d 1030. Because Mrs. Jones continues to maintain a right of survivorship in the property, an actual foreclosure sale of the government's lien against Mr. Jones' interest in the property would likely yield little monetary return and subject any currently owned and after-acquired property of Mr. Jones to liens by the government. Applying its equitable powers, the court holds that the formality of a foreclosure sale is not necessary under the present circumstances and that the government should be entitled to the same remedies as a purchaser at a judgment sale. *See id.* Accordingly, a writ of execution shall be issued in favor of the government and against Mr. Jones' interest in the property. *See id.* This writ of execution shall be the basis for an immediate levy by the U.S. Marshal upon Mr. Jones' tenancy by the entirety. However, no immediate sale is to be held. "The levy shall be deemed continuously effective without the requirement of a sale of the property, thus according plaintiff an on-going priority position" until such time as the judgment entered by this court is satisfied or until the death of Mr. Jones.[13] *Id.* at 380–81, 448 A.2d 1030.

Furthermore, by virtue of the writ of execution and the subsequent levy, the government and Mrs. Jones will become tenants in common in the property for the joint lives of Mr. and Mrs. Jones. *Newman*, 70 N.J. at 261, 359 A.2d 474. Since the government will not be able to jointly occupy the Jones' home with Mrs. Jones, equity requires that the cotenant in possession make appropriate payments to the cotenant out of possession. *Id.* at 267–68, 359 A.2d 474; *ESB, Inc.*, 185 N.J.Super. at 381, 448 A.2d 1030. As a result, Mrs. Jones will have to commence paying to the government one-half the imputed rental value of the property, which payments are to be credited against unpaid amounts of the government's judgment. *Newman*, 70 N.J. at 267–68, 359 A.2d 474; *ESB, Inc.*, 185 N.J.Super. at 381, 448 A.2d 1030. The current rental value of the property is estimated at $750 per month. *See* Appraisal Report attached as Exh. F to Declaration of Charles M. Flesch. Thus, Mrs. Jones will be responsible for making monthly payments to the government in the amount of $375, to be reduced by appropriate maintenance costs and expenses.[14] *See Newman*, 70 N.J. at 267–68, 359 A.2d 474; *ESB, Inc.*, 185 N.J.Super. at 381, 448 A.2d 1030.

The net effect of the remedy structured above is to allow Mr. Jones' family to remain in possession of the family home, and to provide some return to the government on its lien against Mr. Jones' interest. If Mr.

---

12. The government cites *United States v. Mazzara*, 530 F.Supp. 1380 (D.N.J.1982) in support of its contention that a sale of the entire Jones property should be permitted. However, because *Mazzara* did not involve property held as a tenancy by the entirety, this court does not find the case prescriptive with regard to the present facts.

13. If Mrs. Jones survives her husband, she will obtain full title to the property via her right of survivorship, and the writ of execution will be discharged because Mrs. Jones would take the property free of the government's interest. *ESB, Inc.*, 185 N.J.Super. at 381, 448 A.2d 1030.

However, if Mr. Jones outlives Mrs. Jones, he will become the sole owner of the property and the government will be able to force the sale of the property and satisfy the balance of Mr. Jones' liability out of the proceeds collected from the sale. *Id.* Additionally, if for any reason Mrs. Jones' right of survivorship should become extinguished, e.g. upon her sale of the property to another, the government will also be entitled to recover upon its judgment. *See id.*

14. Examples of appropriate expenses are property taxes and insurance costs. Such expenses are to be shared by the co-tenants.

Jones is able to satisfy the government's lien at any time prior to his own death or the death of Mrs. Jones, the judgment shall be satisfied and Mr. Jones' right of survivorship will revert back to him. *See ESB, Inc.,* 185 N.J.Super. at 382, 448 A.2d 1030.

### III. Conclusion

For the reasons set forth above, the motion of the United States government for summary judgment is granted in part and denied in part as follows:

(1) A judgment shall be entered on Count I of the Amended Complaint in favor of the United States government and against defendant Harry C. Jones in the amount of $107,049.99, plus interest that has accrued and will accrue thereon from May 31, 1994 until this judgment is fully paid;

(2) The June 9, 1983 conveyance of the real property located at 165 Sherman Avenue, Atco, New Jersey by defendant Harry C. Jones to defendant Janet E. Jones for $10.00 and "love and affection" was and is fraudulent as to the United States government, and is set aside as null and void;

(3) The United States government is adjudged to have valid and subsisting federal tax liens by virtue of the federal tax and penalty assessments made against Harry C. Jones on all property rights of defendant Harry C. Jones, specifically including Harry C. Jones' ownership interest in the real property located at 165 Sherman Avenue, Atco, New Jersey;

(4) The United States government is prohibited from forcing the sale of the entire real property located at 165 Sherman Avenue, Atco, New Jersey until such time as Janet E. Jones' survivorship interest in the property is extinguished;

(5) A writ of execution shall be issued in favor of the United States government and against defendant Harry C. Jones' interest in the real property located at 165 Sherman Avenue, Atco, New Jersey;

(6) Upon entry of the writ of execution, the United States Marshal shall be directed to immediately levy upon defendant Harry C. Jones' interest in the real property located at 165 Sherman Avenue, Atco,

New Jersey, but no sale of the subject property is to take place;

(7) The levy by the United States Marshal shall be deemed continuously effective without the requirement of a sale of the real property until such time as the judgment entered under Count I of the Amended Complaint is satisfied or until the death of Harry C. Jones;

(8) Defendant Janet E. Jones shall make payments to the United States government in the amount of one-half the imputed rental value of the real property (currently $375 per month), minus appropriate costs, to be credited against the unpaid amount of the judgment to be entered in favor of the United States government and against the defendant Harry C. Jones.